IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LATISA THORNTON, as Administratrix of the Estate of MILDRED RILEY, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:16-cv-00829-RAH |
| JOHN W. MITCHELL, M.D., and THE HEART CENTER CARDIOLOGY, P.C., | ) ) ) ) | (WO) |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendants John D. Mitchell, M.D. and The Heart Center Cardiology, P.C. filed a motion for summary judgment, (Doc. 79), in this wrongful death, medical malpractice case that was granted by the Magistrate Judge upon report and recommendation (Report) on July 9, 2018, (Doc. 108). Upon review by this Court after both sides filed objections, (*see* Docs. 109, 110), this Court sustained the Magistrate Judge's Report to the extent it recommended the entry of summary judgment in the Defendants' favor on grounds that the Plaintiff, Latisa Thornton, as the Administratrix of the Estate of Mildred Riley (Plaintiff, Thornton or Estate), had failed to meet her burden of proof on causation, (Doc. 124). The Court also overruled the Magistrate Judge's Report as it concerned the issue of whether the

1

Estate had shown a question of fact on the issue of breach of duty through testimony from a similarly situated healthcare provider.

The case is again before the Court, this time on the Estate's Motion to Reconsider, (Doc. 126), which challenges both of the stated reasons for the entry of summary judgment. The Defendants have filed a response, (Doc. 129), and the Estate a reply (Doc. 131), and therefore the motion is ripe for resolution.

As the Defendants recognize, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gipson v. Mattox*, 511 F.Supp.2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted).

> Motions to reconsider serve a valuable but limited function. They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.

*Nelson v. Whirlpool Corp.,* 668 F.Supp.2s 1368, 1379 (S.D. Ala. 2009) (internal quotes omitted).

Of the three limited occasions in which a motion to reconsider is appropriate, the Estate focuses on only one. That is, the Estate claims the Court clearly erred on the two stated grounds for granting summary judgment. Upon review of the Estate's Motion to Reconsider (Motion), the Defendants' Response, and the Estate's Reply,

2

and upon review of the record once again, including the operative complaint, the Defendants' summary judgment motion and the Estate's response thereto, the Court disagrees with the Estate's assertion and concludes that the Estate's Motion is due to be denied.

The Estate first argues the Court erred when it concluded that the Estate's two cardiologist experts were not similarly situated to Defendant John W. Mitchell, M.D. and his medical practice. In particular, the Estate argues that the area of medical practice at issue is "clinical cardiology" and not "interventional cardiology" and therefore the Estate's experts, neither of whom is an interventional cardiologist, can testify to a breach of the standard of care by Dr. Mitchell, an interventional cardiologist. To further emphasize its point that the area of medicine at issue is clinical cardiology, the Estate now focuses on Dr. A. Scott Westermeyer. As to both, the Estate argues that they "misdiagnosed" the decedent's condition, which according to the Estate, constitutes the practice of clinical cardiology.

Once again, the Estate attempts to direct attention away from the area of medical practice actually at issue in this case. As the operative complaint makes clear, this suit concerns the failure by an interventional cardiologist to timely perform an interventional procedure (i.e., a cardiac catheterization with percutaneous intervention). While the Estate now attempts to minimize the interventional cardiology aspect of the lawsuit by referring only to a "catheterization

3

procedure" or a "catheterization with *possible* percutaneous intervention," in order for the Estate's suit to have any basis against the Defendants (especially from a proximate causation standpoint), the suit must stand on the premise that a catheterization[1] would have revealed the necessity of a percutaneous intervention procedure and that the percutaneous intervention procedure, if timely performed, probably would have changed the decedent's outcome (she would not have died). Thus, the area of practice clearly was founded upon the area of interventional cardiology, an area in which neither of the Estate's experts practiced, and a medical procedure that neither expert could perform.[2]   *See Panayiotou v. Johnson*, 995 So. 2d 871, 877 (Ala. 2008) (recognizing that interventional cardiology is a specialty and that the plaintiff's cardiologist expert could not testify against the defendant interventional cardiologist).

The Estate's arguments on this point are no different from those previously raised in the briefing on the Defendants' summary judgment motion that this Court already has considered. A party cannot show clear error or manifest injustice by "merely reargu[ing] points previously considered and rejected by the Court."

---

[1] A catheterization would not have changed the outcome; only an interventional procedure would.

[2] Of course, the Estate could have chosen to retain experts who performed interventional procedures such as Dr. Mitchell, but that is not the set of facts presented here.

*Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 684 (S.D. Fla. 2007). And "to the extent [a party] ... tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F.Supp.2d 1284, 1292 (S.D. Fla. 2012) (internal citation omitted). "[C]lear error or manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id*. at 1291-93.  Here, the Estate's argument concerning the standard of care at issue is just that; an attempt to reargue points previously considered and rejected by the Court.

    The Estate's new focus on Dr. Westermeyer is equally unavailing.  Apparently recognizing that its two experts can only testify to clinical cardiology, and not interventional cardiology, the Estate now argues that its experts were competent to testify against Dr. Westermeyer, who the Estate now claims also breached the applicable standard of care. (Doc. 127, p. 10.) As the Defendants point out,[3] (Doc.

---

[3] The Defendants have filed a Motion to Strike, (Doc. 130), the Estate's arguments as to Dr. Westermeyer, which the Defendants assert are being raised for the first time in the Estate's Motion.  The Defendants' motion to strike is due to be denied, as the Defendants' concern is already subsumed into the general standard that governs motions to reconsider. *See Gipson v. Mattox*, 511 F.Supp.2d 1182, 1185 (S.D. Ala. 2007) (motions to reconsider "do not exist to permit losing parties to prop up arguments . . . to inject new ones, nor to provide evidence or authority previously

129, p. 5.), the Estate never specifically claimed that Dr. Westermeyer breached the standard of care or that The Heart Center was being sued for Dr. Westermeyer's negligence before raising it for the first time in the motion to reconsider; not in the Complaint and not in its 78-page summary judgment response brief. *See* ALA. CODE § 6-5-551 (1975) (AMLA requires a plaintiff to "include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts."). Indeed, the only substantive reference to Dr. Westermeyer during the course of proceedings prior to the Court's summary judgment order was in the Estate's motion to preclude Dr. Westermeyer from giving any opinion testimony in the case, and even then, the Estate never asserted that the Defendants were being sued for the medical negligence of Dr. Westermeyer. (Docs. 80, 89.) Having not plead any negligence by Dr. Westermeyer, having not argued in its summary judgment responsive brief about Dr. Westermeyer, and having undertaken efforts to preclude him from giving any opinion testimony[4] in this case, the Estate cannot now, after-

---

omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[4] Had the Estate alleged and argued that it was suing The Heart Center for medical negligence by Dr. Westermeyer, Dr. Westermeyer not only would have been permitted to testify as a fact witness, but also would have been able to give opinion testimony that neither he nor The Heart Center through him breached the standard

6

the-fact, suddenly inject his alleged negligence as grounds for reconsidering the Court's prior summary judgment order. In short, it is far too late for the Estate to now claim that summary judgment should not be granted because the Estate's experts could testify against Dr. Westermeyer even though they could not testify against Dr. Mitchell. *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997); *Rossi v. Troy State University*, 330 F.Supp.2d 1240, 1249 (M.D. Ala. 2002).

Aside from the expert competency issue, the Estate also finds fault with the Court's decision to sustain the Magistrate Judge's Report as it concerns causation. The crux of the Estate's argument is simply that the medical facts and opinions from the Estate's two cardiologist experts are sufficient to provide a legally sufficient cause of death. (Doc. 127, p. 12.) The Estate further argues that the Court should not have followed the Alabama Supreme Court's decision in *Shanes v. Kiser*, 729 So. 2d 319 (Ala. 1999), but instead should have followed the Alabama Court of Civil Appeals' decision in *Waddail v. Roberts*, 827 So. 2d 796 (Ala. Civ. App. 2001), a death case in which the appellate court allowed the case to proceed despite the lack of an autopsy.

Contrary to the Estate's assertion, the Court reviewed the record in detail, especially through the lens of *Daubert* and relevant Alabama Supreme Court

---

of care. But that is not the path that the Estate chose to travel with respect to Dr. Westermeyer.

precedent interpreting causation under the AMLA. The Court need not engage in the analysis that it already, twice before, has engaged in. (*See* Docs. 108, 124.) While the Estate did not attempt to distinguish *Shanes* through the *Waddail* case previously, this Court's review of the case does not reveal that *Waddail* trumps *Shanes* as the more persuasive decision applicable to this case. Unlike the facts here, in *Waddail*, there was no dispute as to the injury-causing agent (there, diabetic ketoacidosis). *See Waddail*, 827 So. 2d at 800 ("Like the court in *Parker,* we know the injury-causing agent in this case, specifically diabetic ketoacidosis."). Here, as in *Shanes*, it is necessary to know the precise injury-causing agent, which possibly could have been any number of agents, including an electrolyte imbalance, obstructive sleep apnea, pulmonary thromboembolism, stroke, aortic aneurysm, heart attack, or cardiac arrhythmia. *Id*. at 801 ("In *Shanes,* it was necessary to know the precise cause of death, because the mother could have died from a heart attack, a massive stroke, a pulmonary embolism, or an aneurysm."). Therefore, for the reasons that the Estate's challenge to the similarly situated healthcare provider issue are denied, so too is this one. *See Mays*, 122 F.3d at 46.

Accordingly, it is hereby ORDERED that:

(1) The Estate's Motion to Reconsider, (Doc. 126), is DENIED; and,

(2) The Defendants' Motion to Strike, (Doc. 130), is DENIED as moot.

DONE, this 12th day of August, 2020.

                                       /s/ R. Austin Huffaker, Jr.
                                R. AUSTIN HUFFAKER, JR.
                                UNITED STATES DISTRICT JUDGE